IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ENERGY CONSUMPTION AUDITING ) <br> SERVICES, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BRIGHTERGY, LLC, ) <br> ) <br> **Service:** ) <br> **Adam Blake – Registered Agent** ) <br> **4115 W. 74th Street** ) <br> **Prairie Village, Kansas 66208** ) <br> ) <br> Defendant. ) <br> _____) | Case No.: _____ |

## COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

**COMES NOW** Plaintiff Energy Consumption Auditing Services, LLC ("ECAS"), by and through its undersigned counsel, and for its Complaint and Request for Injunctive Relief against defendant Brightergy, LLC, states as follows:

### Parties and Jurisdiction

1. Plaintiff ECAS is a limited liability company organized and existing under the laws of the State of Kansas with its principal place of business in Overland Park, Johnson County, Kansas.

2. Defendant Brightergy, LLC ("Defendant") is a limited liability company organized under the laws of the State of Missouri with its principal place of business in Kansas City, Jackson County, Missouri, but is authorized to conduct business in the State of Kansas, and may be served with process through its Kansas registered agent Adam Blake at 4115 W. 74th Street, Prairie Village, Kansas 66208.

1

4.      This action involves a controversy between citizens of different domestic states within the meaning of the term "citizens" in 28 U.S.C. § 1332(c)(1) in an amount in excess of $75,000 exclusive of costs and interest and jurisdiction therefore exists in this Court by reason of diversity of citizenship under 28 U.S.C. § 1332.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §139(b) in that Brightergy, LLC is subject to personal jurisdiction in this judicial district at the time of commencement of this action.

## Factual Background

### A. ECAS Enters Into An Independent Contractor Agreement with SolarWorld Americas, LLC

6.      On May 7, 2013, ECAS entered into a Participation Agreement (the "Agreement") with SolarWorld Americas, LLC ("SolarWorld"), through which ECAS is recognized an Authorized Installer of SolarWorld and is permitted to market and provide engineering, design, and installation services with respect to SolarWorld solar electric products and systems to end users within the states of Kansas and Missouri.

7.      The Agreement further acknowledges that SolarWorld has entered into a contract with the governmental cooperative group Houston-Galveston Area Council dated January 28, 2013 (the "HGAC Contract"), through which municipalities, schools, and other entities engaging in government services are able to contract with SolarWorld without the expense and time constraints of the competitive bidding process.

8.      Under the Agreement and in consideration for ECAS' marketing efforts, ECAS receives a percentage of all sales it makes of SolarWorld solar electric products and systems to end users.

9.      The Agreement is for an initial term from May 7, 2013 through January 31, 2015, and was in full force and effect for all times relevant to ECAS' claims made herein.

**B. ECAS Successfully Markets a Multi-Builiding Solar Panel Contract With The City Of North Kansas City**

10.     In June 2013, ECAS began working with representatives of the City of North Kansas City ("NKC") with respect to providing SolarWorld products and services to various NKC public buildings.

11.     NKC is a member of the HGAC-buy program through the Mid-America Regional Council, and upon information and belief has previously purchased equipment through their program.

12.     On or about July 8, 2013, ECAS submitted proposals to SolarWorld with respect to NKC's solar energy needs.

13.     Around this same time, ECAS began working with NKC staff to provide a feasibility study for the purchase and installation of solar panels on certain NKC structures.

14.     On or about October 14, 2013, NCK Public Works Director Pat Hawver ("Hawver") prepared and circulated an interoffice memorandum to NKC Mayor Don Stielow and the city council members detailing ECAS' efforts in preparing a comprehensive plan for the purchase and installation of SolarWorld solar panels, which was to be presented to the city council members during the October 15, 2013 meeting.[1]

15.     The memorandum alerted its readers to an energy rebate the electric utility company Kansas City Power and Light ("KCPL") presently offers, stating:

> KCPL's Energy Rebate Program provides rebates to assist customers with the costs to purchase and install solar panels. The current rebate refunds $2 per watt for the purchase and installation of solar panels, with a maximum rebate of $50,000 per structure. This program is being phased out. Any project not

---
[1] *See Minutes of Regular Council Meeting held on October 15, 2013, attached hereto as Exhibit A.*

approved by KCPL by December 31, 2013, is subject to the reduced rebate of $1.50 per watt with a cap of $37,500. In 2014, the rebate will be reduced to $1 per watt, and in 2015, the program is expected to end.

16.  The memorandum further discussed the months-long efforts undertaken by NKC staff members and ECAS:

> Representatives from ECAS, Solar World, have worked with staff over the past two months to provide a feasibility study for the purchase and installation of solar panels on certain structures owned by the City of North Kansas City. Utilizing KCPL's Energy Rebate Program, a cost/savings forecast was developed. The forecast estimated that if the City goes forward with the program, approximately $123,900 would be saved in electrical costs annually, and approximately $3.1 million will be saved over a 25-year period. These projections are based on Option 1, which is the option recommended by staff and described below.

17.  The memorandum further advised of the three options ECAS presented to NKC with respect to the sale and installation of SolarWorld equipment, with the first two options described as follows:

> 1) Option 1 is to install the minimum number of panels on structures to receive KCPL's maximum rebate. On buildings such as City Hall/Police Station, the Community Center, and the WPC facility, the City would receive the maximum rebate of $50,000. On smaller structures, such as Fire Station No. II and sewer pump stations, the rebate would be less because limitations of roof and area space.
>
> The total cost for installation of solar panels under Option 1 is approximately $1.1 million. The City's cost would be approximately $508,000, and the KCPL rebate would be approximately $595,000. If the timeframe of the process does not meet the December 31st deadline, the projected cost would be approximately $657,300, and the rebate would be approximately $446,800. With this option, the payback of investment period ranges from 4.3 years to 18 years, with the average payback period per structure of 11.5 years. The City also has the ability to pick and choose structures and not install the panels on all structures if not interested in a longer payback period. More details of the payback times, etc. will be provided during the presentation.
>
> - Estimated annual savings - $123,900
> - Estimated 25-year savings - $3.1 million
>
> 2) Option 2 is for the City to install the maximum amount of panels that each structure could accommodate. The total cost for installation of solar panels

4

under Option 2 is approximately $3.45 million. The City's cost would be approximately $2.86 million, and the KCPL rebate would remain approximately $595,000.

If the timeframe of the process does not meet the December 31st deadline, the projected costs would be an additional $149,000 because of the rebate reduction. With this option, the payback of investment period ranges from 4.3 years to 18.5 years, with the average payback period per structure of 12.6 years.

- Estimated annual savings - $386,340
- Estimated 25-year savings - $9.66 million

18. On October 15, 2013, a Regular Council Meeting of the NKC city council was held, during which representatives of ECAS were afforded an opportunity to present their proposal to the full city council.

19. The official Minutes of Regular Council Meeting held on October 15, 2013 memorialized that:

> Pat Hawver explained the proposal to reduce energy costs to the City Council. (See attached.) Kristene Canady, ECAS, and Orion Bashkiroff of SolarWorld provided a video about the history of the company and durability of the solar panels, as well as handouts related to other projects they have worked on. Mr. Bashkiroff also provided a PowerPoint presentation related to solar panels and energy. (See attached.)
>
> Mr. Hawver explained that some of the municipal buildings would need roof repairs prior to going forward with this project. Total cost to repair the roofs that are in need of roof repairs is approximately $410,000, which he would like to include in the cost of the project.
>
> C. Conarroe expressed interest in a combination of Option 1 and Option 2 by adding more panels at the Community Center, as this location has the highest electricity cost to the City. C. Young felt the City needed to use one-time money from Gaming and go with Option 2. ***Council consensus was to go with Option 1 with the possibility of using portions of Option 2, if desired.*** Mr. Hawver stated an agreement would be prepared for the Council's consideration. (emphasis added).

**C. Defendant Engages In A Series of Misconduct to Deprive ECAS the Benefits of the Agreement with the City of North Kansas City to Adopt Option 1 and Also to Besmirch ECAS' Reputation and Goodwill**

20.     Upon information and belief, one or more representatives of defendant attended the October 15, 2013 NKC City Council meeting and viewed ECAS' proposal.

21.     Upon information and belief, John Sedlock ("Sedlock"), Director of Business Development of defendant telephoned Hawver subsequent to the October 15, 2013 presentation with the intent to intentionally interfere with the existing business relationship between NKC and ECAS.

22.     Upon information and belief, over the next several days, Sedlock consistently attempted to contact Hawver in an ongoing effort to intentionally interfere with the existing business relationship between NKC and ECAS.

23.     On October 30, 2013, Hawver emailed Sedlock with a spreadsheet summarizing the financial aspects of ECAS' Option 1.

24.     Later that day, on October 30, 2013, Jason Aytes ("Aytes"), defendant's Director of Sales and Finance, forwarded Hawver's email to Ryan Tull, Vice President of Rainen Companies, Inc., stating:

> Ryan,
>
> Hey, I know you don't want to get in the middle of this NKC solar deal – and I'm not asking you to. However, we met with the mayor and couple others yesterday and it is clear that the numbers ECASKC is presenting is way off, and borderline fraudulent.
>
> Here is the spreadsheet they used to present to the board…along with a false sense of urgency. Unbelievable.
>
> As mentioned, I'm not asking or expecting you to do anything…I just wanted you to see this as you were intimately involved with the city council in the past. Deals like this, if they go through give the industry a black eye as the City will undoubtedly be upset (if not sue) when these numbers don't shake out. This is less about us getting the business as it is some company damaging the industry and potentially ripping off NKC.[2]

---

[2] *See email string, attached hereto as Exhibit B.*

Best regards,

Jason.

25. Mr. Tull, in turn, forwarded Ayates' email to City Councilmember Mark Conarroe, City Administrator Matt Shatto, and to Hawver, stating:

Matt, Pat, and Mark:

Please see the correspondence below. I [sic] looks like Brightergy has already been in contact with Pat. I just want the City to be protected. I've used Brightergy and like them but I really like the idea of Solar World using all American made so I don't really care who the City goes with. I don't have a dog in the fight other than a friendly relationship because of a short but positive track record with Brightergy. I certainly don't have a financial dog in the fight. Just making sure they're [sic] numbers are vetted. I mostly want the City to go with solar and get a good deal. I'm not sure who the best neutral party would be to decide if the #s make sense.

26. Later that same day, Sedlock emails Hawver, again attempting to interfere with ECAS' business relationship, by stating:

Do you have usage data as well? I'm particularly interested in the pump stations after talking to the Mayor. I think you have been provided some incorrect information on over production.

27. The following day, October 31, 2013, an approximate 1-hour meeting took place, attended by Sedlock, Kristene Canady ("Canady"), and NKC representatives, during which time Ayates' email disparaging ECAS was discussed. Specifically, NKC representatives stated the email alarmed the city, that the city was now concerned about what defendant represented were "fraudulent numbers," what "scares the city to death" is that the representatives now believe they are moving forward with fraudulent numbers," and that the city had spent all day concerned with the email.

28. When offered a chance to clear the record regarding Ayates' inflammatory statements, Sedlock stated he didn't author the email, and, incredibly, that he did not know

7

Ayates. Sedlock further doubled down on the disparagement in stating, without any supporting evidence, that ECAS' proposed numbers simply were not realistic, and not possible, further suggesting that NKC had better have everything in writing, because "when this goes south," NKC will have something to fall back on. After further discussing the negative impacts of Ayates' email, the meeting concluded with the city representatives advising that they would need to again look into the numbers of ECAS' already-vetted proposal to "figure out what is going on."

29. Despite defendant's false and outrageous representations concerning ECAS' proposition, ECAS representatives continued to work with NKC representatives on November 1, 2013 in hammering out the final language for Option 1, as presented by ECAS.

30. However, upon information and belief, defendant contacted a NKC representative at some point between November 1, 2013 and November 4, 2013, now asserting that the HGAC Contract, the agreement permitting SolarWorld and its contractors to sell and market SolarWorld products to municipalities, was not valid, which required remediation efforts on the part of ECAS on November 5, 2013.

31. Upon information and belief, Defendant's tortious interference efforts continue, with defendant most recently enlisting the assistance of a local state representative in attempting to court NKC councilmembers to abandon its agreement to implement Option 1, and to further abandon executing Option 2.

32. Defendant has pursued a scheme to spread numerous false and misleading representations relating to the quality, legality, legitimacy, ethics, and character of ECAS, along with its services and its products. Most egregiously, defendant's attacks state or imply that ECAS is engaged in deception and other improper practices.

33. Defendant's activities were intentionally, willfully, and maliciously aimed at conveying a false impression about ECAS and its business practices with the aim of damaging ECAS' goodwill and reputation in the solar energy marketplace while destroying the trust built up by and between ECAS and NKC.

34. Defendant's willful, knowingly false, and misleading statements are likely to deceive which municipalities, schools, and other actual and potential business partners of ECAS and has caused, and will continue to cause, grave and irreparable injury to ECAS.

35. Each of the unfounded statements made by defendant set forth herein are not only false and misleading, but were made by defendant without any basis in fact even suggesting such statements may be truthful.

36. Each of the unfounded statements made by defendant set forth herein were published and/or otherwise communicated to third parties including, but not limited to, potential and actual customers of ECAS.

37. Defendant's continuous misrepresentation of ECAS and, in particular, Options 1 and 2 as presented to NKC, has caused NKC to withdraw from consummating the agreement with respect to Option 1. As set forth above, both Options 1 and 2 are extremely time-sensitive, and any delay may result in the forfeiture of hundreds of thousands of dollars of energy rebates should Defendant's interference continue.

## COUNT I – INJUNCTIVE RELIEF

38. ECAS hereby incorporates by reference the allegations set forth in paragraphs 1 through 37 as set forth above.

9

39. As discussed herein, defendant engaged and continues to engage in a systematic and methodical scheme to wrongfully disseminate false statements to ECAS' current and prospective customers.

40. Defendant's conduct will continue to cause ECAS to suffer irreparable harm to its reputation and goodwill absent injunctive relief.

41. The actual and threatened injuries to ECAS are greater than any injury defendant may incur if the injunctive relief sought is granted.

42. The public interest would be further by deterring and penalizing individuals from tortuously interfering in the business relationships of others.

43. As set forth above, ECAS has a substantial likelihood of succeeding on the merits of its several counts for damages.

44. ECAS has no adequate remedy at law for the damaged reputation and loss of goodwill caused by defendant's ongoing misconduct.

45. By reason of defendant's unlawful acts and practices described herein, ECAS has suffered, is suffering, and will continue to suffer irreparable injury for which ECAS is entitled to injunctive relief under the Lanham Act as well as under state and other federal law.

**WHEREFORE**, Plaintiff ECAS prays that judgment be entered in its favor and against defendant for compensatory damages in an amount in excess of $75,000; for an award of punitive damages against defendant in an amount as will serve to punish defendant and deter them and others from like conduct; that preliminary and injunctive relief be entered in its favor and against defendant preventing it from interfering in any way with ECAS' performance of its contractual relationship with NKC with respect to Option 1 and Option 2 as discussed above; for

its costs incurred herein, including reasonable attorneys' fees; and for such other and further relief as the Court deems just and proper.

### COUNT II – TORTIOUS INTERFERENCE WITH A CONTRACT

46. ECAS hereby incorporates by reference the allegations set forth in paragraphs 1 through 45 as set forth above.

47. Option 1, as presented to and adopted by NKC discussed above formed a valid, existing, and enforceable contract.

48. Defendant had knowledge of the contract.

49. Through the actions of defendant set forth above, defendant intentionally procured a breach of the contract.

50. In particular, defendant's intentional misrepresentations set forth above caused NKC to stall, perhaps indefinitely, in its negotiations concerning the language of the contract comprising Option 1 which, in turn, had indefinitely suspended negotiations concerning Option 2. Consequently, ECAS cannot presently begin work on Option 1, and as noted above, any additional delay may result in substantial loss of energy credits.

51. Defendant lacked justification or any basis for its actions.

52. ECAS suffered damages as a result of its inability to begin performing under Option 1, with projected profits from Option 1 exceeding $75,000.00.

**WHEREFORE,** Plaintiff ECAS prays that judgment be entered in its favor and against defendant for compensatory damages in an amount in excess of $75,000; for an award of punitive damages against defendant in an amount as will serve to punish defendant and deter them and others from like conduct; that preliminary and injunctive relief be entered in its favor and against defendant preventing it from interfering in any way with ECAS' performance of its

contractual relationship with NKC with respect to Option 1 as discussed above; for its costs incurred herein, including reasonable attorneys' fees; and for such other and further relief as the Court deems just and proper.

### COUNT III – TORTIOUS INTERFERENCE WITH A PROSPECTIVE BUSINESS ADVANTAGE OR RELATIONSHIP

53. ECAS hereby incorporates by reference the allegations set forth in paragraphs 1 through 52 as set forth above.

54. As a result of the continued efforts in preparing and the marketing Option 1 and Option 2 as discussed above, ECAS had a business relationship or expectancy to install solar energy equipment for NKC pursuant to Option 1 and Option 2.

55. Defendant had actual or constructive knowledge of these business relationships and business expectancies.

56. But for the conduct of defendant, ECAS was reasonably certain to have continued the business relationship or realized the business expectancy with NKC.

57. Through defendant's actions in materially and falsely misrepresenting ECAS' work and performance, defendant acted intentionally to harm ECAS' business relation and expectancies without reasonable justification or excuse.

58. ECAS has already suffered significant damages as a result of defendant's misconduct, including but not limited to loss of profit for completion of Option 1 of not less than $75,000.00, and loss of profit for completion of Option 2. Further, the disparaging and false statements made against ECAS by defendant continue to negatively impact ECAS' goodwill in the solar power industry.

**WHEREFORE**, Plaintiff ECAS prays that judgment be entered in its favor and against defendant for compensatory damages in an amount in excess of $75,000; for an award of

punitive damages against defendant in an amount as will serve to punish defendant and deter them and others from like conduct; that preliminary and injunctive relief be entered in its favor and against defendant preventing it from interfering in any way with ECAS' performance of its contractual relationship with NKC with respect to Option 1 and Option 2 as discussed above; for its costs incurred herein, including reasonable attorneys' fees; and for such other and further relief as the Court deems just and proper.

### COUNT IV – FEDERAL UNFAIR COMPETITION, 15 U.S.C. § 1125 (LANHAM ACT)

59. ECAS hereby incorporates by reference the allegations set forth in paragraphs 1 through 58 as set forth above.

60. Defendant knew or should have known that its use of the false and materially misleading statements set forth above were likely to cause ECAS pecuniary harm.

61. The false and misleading representations misstate the nature, characteristics, and qualities of ECAS' products, such representations are material, and violate Section 43(a) of the Lanham Act.

62. Defendant's acts set forth above were made in an attempt to interfere with ECAS' customer relationships, and each were made for the purpose of inducing past and prospective customers to avoid dealings with ECAS.

63. Defendant's false and misleading representations of fact in its written and verbal statements to NKC, said statements being made to induce NKC to abandon ECAS' Option 1 and Option 2 and instead pursue a business relationship with defendant, misrepresented the nature, characteristics, and qualities of ECAS' products and services.

64. The false and misleading statements made by defendant were material in that they would tend to, or did actually, deceive the intended audience.

65. Defendant's aforesaid actions constitute unfair competition and violate 15 U.S.C. §1125.

66. As an actual and proximate result of defendant's acts as alleged herein, ECAS has suffered and will continue to suffer great damage to its business, goodwill, reputation, and profits, for which ECAS is entitled to relief.

**WHEREFORE**, Plaintiff ECAS prays that judgment be entered in its favor and against defendant for compensatory damages in an amount in excess of $75,000; for an award of punitive damages against defendant in an amount as will serve to punish defendant and deter them and others from like conduct; that preliminary and injunctive relief be entered in its favor and against defendant preventing it from interfering in any way with ECAS' performance of its contractual relationship with NKC with respect to Option 1 and Option 2 as discussed above; for its costs incurred herein, including reasonable attorneys' fees; and for such other and further relief as the Court deems just and proper.

## COUNT V – BUSINESS DEFAMATION

67. ECAS hereby incorporates by reference the allegations set forth in paragraphs 1 through 66 as set forth above.

68. The false and misleading statements made by defendant set forth above defame the business enterprise of ECAS as well as the products and services offered by ECAS and other potential or actual strategic partners.

69. The false and misleading statements made by defendant set forth above were false and/or disseminated intentionally without a good faith basis of fact in that defendant failed to use ordinary care to determine whether said statements were true. Further, defendant knew said statements would have a potentially devastating impact on ECAS.

70. Defendant's conduct is not protected by any privilege, but rather was motivated by its bad faith intent to harm ECAS.

71. ECAS has suffered continuing and ongoing commercial damages as a result of defendant's statements.

**WHEREFORE**, Plaintiff ECAS prays that judgment be entered in its favor and against defendant for compensatory damages in an amount in excess of $75,000; for an award of punitive damages against defendant in an amount as will serve to punish defendant and deter them and others from like conduct; that preliminary and injunctive relief be entered in its favor and against defendant preventing it from interfering in any way with ECAS' performance of its contractual relationship with NKC with respect to Option 1 and Option 2 as discussed above; for its costs incurred herein, including reasonable attorneys' fees; and for such other and further relief as the Court deems just and proper.

## COUNT VI – LIBEL

72. ECAS hereby incorporates by reference the allegations set forth in paragraphs 1 through 71 as set forth above.

73. Defendant published the false and misleading statements concerning ECAS' business, and in particular with respect to Option 1 and Option 2, by sending said statements to various individuals via electronic mail, as more fully discussed above.

74. Said statements were false in that they materially misstated the nature, quality, and characteristics of ECAS and its relevant products and projects.

75. When defendant published said statements, it knew that the representations were false, recklessly disregarded whether they were true, or failed to use ordinary care to determine whether they were true.

76. Defendant's publication of these false, defamatory statements concerning ECAS has damaged ECAS' reputation.

**WHEREFORE**, Plaintiff ECAS prays that judgment be entered in its favor and against defendant for compensatory damages in an amount in excess of $75,000; for an award of punitive damages against defendant in an amount as will serve to punish defendant and deter them and others from like conduct; that preliminary and injunctive relief be entered in its favor and against defendant preventing it from interfering in any way with ECAS' performance of its contractual relationship with NKC with respect to Option 1 and Option 2 as discussed above; for its costs incurred herein, including reasonable attorneys' fees; and for such other and further relief as the Court deems just and proper.

## COUNT VII – INJURIOUS FALSEHOOD

77. ECAS hereby incorporates by reference the allegations set forth in paragraphs 1 through 76 as set forth above.

78. Defendant published the false and misleading statements concerning ECAS' business, and in particular with respect to Option 1 and Option 2, by sending said statements to various individuals via electronic mail, as more fully discussed above.

79. These statements harmed ECAS including ECAS' reputation, and resulted in pecuniary loss by ECAS which is continuing.

80. Defendant intended for the publication of these statements to harm ECAS' pecuniary interests, or defendant recognized or should have recognized that the publication of said statements was likely to do so by using electronic sources of communication to send said statements to various individuals via electronic mail, as more fully discussed above.

81. Defendant knew that these statements were intentionally false or recklessly disregarded whether they were accurate or false.

82. Defendant's misconduct resulted in ongoing damages to ECAS.

**WHEREFORE**, Plaintiff ECAS prays that judgment be entered in its favor and against defendant for compensatory damages in an amount in excess of $75,000; for an award of punitive damages against defendant in an amount as will serve to punish defendant and deter them and others from like conduct; that preliminary and injunctive relief be entered in its favor and against defendant preventing it from interfering in any way with ECAS' performance of its contractual relationship with NKC with respect to Option 1 and Option 2 as discussed above; for its costs incurred herein, including reasonable attorneys' fees; and for such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, ECAS hereby makes its demand for a trial by jury of all claims in this action triable to a jury.

**DESIGNATION OF PLACE OF TRIAL**

Pursuant to D. Kan. Rule 40.2, ECAS hereby requests that the trial of this case be held in the U.S. Courthouse, 500 State Avenue, Kansas City, Kansas.

SANDBERG PHOENIX & von GONTARD, P.C.


By: */s/ Mark D. Murphy*
    Mark D. Murphy, KS #13129
    Christopher J. Zarda, KS# 23659
    7400 West 130th Street-Suite 130
    Overland Park, Kansas 66213
    mmurphy@sandburgphoenix.com
    czarda@sandburgphoenix.com
    913-851-8484 Tel
    913-851-3737 Fax
    *ATTORNEYS FOR PLAINTIFF*

## **VERIFICATION**

STATE OF KANSAS           )
                          ) ss.
COUNTY OF JOHNSON         )

**KRISTENE CANADY**, being of lawful age, and first duly sworn upon oath, states that she is the President of Energy Consumption Auditing Services, LLC; that she has read the foregoing Verified Complaint; that this verification is upon her own knowledge, information, and belief; and that to the best of her knowledge and belief the allegations in the foregoing Verified Complaint are true.

_____
KRISTENE CANADY

Subscribed and sworn to before me this 12th day of November 2013.

_____
Notary Public

My Commission Expires
MARK D. MURPHY
NOTARY PUBLIC
STATE OF KANSAS
My Appt. Exp. 03/30/16