## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ENERGY CONSUMPTION AUDITING SERVICES, LLC,** | |
| **Plaintiff/Counterclaim Defendant,** | |
| **v.** | **Case No. 13-2588-DDC-KGG** |
| **BRIGHTERGY, LLC,** | |
| **Defendant/Counterclaimant,** | |
| **v.** | |
| **KRISTENE CANADY,** | |
| **Counterclaim Defendant.** | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff/counterclaim defendant Energy Consumption Auditing Services, LLC ("ECAS")
filed this lawsuit against defendant/counterclaimant Brightergy, LLC ("Brightergy") alleging
various claims, including tortious interference and unfair competition arising from the business
dealings between these two solar panel companies and the City of North Kansas City ("North
Kansas City").  Brightergy filed an Answer and Counterclaim (Doc. 5) alleging four
counterclaims against ECAS and Kristene Canady:  (1) tortious interference with prospective
business advantage or relationship; (2) common law unfair competition; (3) defamation; and (4)
injurious falsehood.  This matter comes before the Court on ECAS and Kristene Canady's
("Counterclaim Defendants") Motion to Dismiss Brightergy's Counterclaim (Doc. 18).  After
considering the arguments made by both parties, the Court denies the Counterclaim Defendants'
Motion to Dismiss.

I.     **Factual Background**

The following facts are taken from Brightergy's Answer and Counterclaim (Doc. 5) and viewed in the light most favorable to it.  *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) ("We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff].") (quotation omitted).  Brightergy is a full-service renewable energy provider, specializing in solar panel system design, installation, and maintenance.  ECAS markets, sells, and installs solar panel systems manufactured by SolarWorld.  Kristene Canady ("Canady") is a member and President and CEO of ECAS.

Beginning in March 2012, Brightergy entered into discussions with North Kansas City about leasing and installing solar panel systems on one or more of North Kansas City's government buildings.  Brightergy identified over 20 opportunities to install solar panel systems, and Brightergy drafted plans and estimates for those projects and presented them to North Kansas City.  After having these discussions, representatives from North Kansas City told Brightergy that it was not in a position to install solar panel systems that year, but it would be interested in doing business with Brightergy in 2013.

In June 2013, Brightergy contacted representatives of North Kansas City and restarted discussions with those representatives about leasing and installing solar panel systems. Afterwards, the Counterclaim Defendants began soliciting and contacting representatives of North Kansas City in an effort to dissuade North Kansas City from doing business with Brightergy and to convince it to do business with ECAS.  In these communications, the Counterclaim Defendants allegedly made fraudulent misrepresentations to North Kansas City about the power and cost savings that ECAS's solar panels would generate.

On October 31, 2013, a Brightergy representative attended a meeting with representatives of North Kansas City and Canady.  During that meeting, Canady allegedly made disparaging statements to North Kansas City representatives about Brightergy and its business, including telling the representatives that Brightergy's solar panels and equipment were overpriced and inferior to ECAS's panels.  Canady also stated that Brightergy's solar panels were "essentially junk because they were made outside of the United States."  Def.'s Answer and Countercl. at 16, ¶ 38 (Doc. 5).

Ultimately, North Kansas City decided not to do business with Brightergy.  Brightergy alleges, as a result of the Counterclaim Defendants' actions, it has suffered damages including damage to its reputation and lost profits.

## II.      Legal Standard

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual

support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009)

(quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

Although the Court must assume that the factual allegations in the complaint are true, it is

"'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 1263

(quoting *Iqbal*, 556 U.S. at 678). "'Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v.

Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

## III.    Analysis

The Counterclaim Defendants ask the Court to dismiss each of the four claims asserted in

Brightergy's Counterclaim under Fed. R. Civ. P. 12(b)(6) for failing to state a claim. The parties

agree that Missouri law governs the claims asserted by Brightergy in its Counterclaim. Here, the

parties have invoked the Court's diversity jurisdiction. In diversity cases, the Court applies the

law that would apply if the plaintiff had brought the suit in Kansas state court. *Snyder v. Am.

Kennel Club*, 661 F. Supp. 2d 1219, 1229–30 (D. Kan. 2009) (citing *Klaxon Co. v. Stentor Elec.

Mfg., Co.*, 313 U.S. 487, 496 (1941); *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir.

2007)). "In Kansas, tortious interference claims and defamation claims are governed by the law

of the state where the wrong was felt." *Snyder*, 661 F. Supp. 2d at 1230 (citing *Ling v. Jan's

Liquors*, 703 P.2d 731, 735 (Kan. 1985)). In cases where the alleged wrong to plaintiffs involves

financial harm, Kansas law requires the court to apply the law of the state where plaintiffs "felt"

that financial injury. *Id.* (citations omitted). In this case, Brightergy is a Missouri company and

the claims asserted by Brightergy in its Counterclaim arise out of projects in Missouri. The

Counterclaim Defendants suggest that Missouri state law governs Brightergy's claims under the

Kansas choice of law provisions.  Brightergy agrees.  Therefore, the Court applies Missouri law here.

### A.  The Counterclaim Defendants Did Not Waive Their Right to File a Motion to Dismiss.

Brightergy filed its Counterclaim on December 20, 2013.  The Counterclaim Defendants filed their Answer to the Counterclaim on January 24, 2014.  On March 13, 2014, Magistrate Judge Kenneth G. Gale held a scheduling conference with the parties and entered a Scheduling Order on March 20, 2014, which states:  "The parties have stipulated that no motions to dismiss will be filed in this case."  Doc. 16 at 8.  Eight days later, on March 28, 2014, the Counterclaim Defendants filed their Motion to Dismiss Brightergy's Counterclaim.  Doc. 18.

Brightergy argues that the Counterclaim Defendants waived their right to file their Motion to Dismiss because they expressly represented to the Court that it would file no motions to dismiss.  The Counterclaim Defendants respond that they cannot confirm whether the parties addressed any specific deadline or posture about the contemplated filing of a motion to dismiss without a transcript from the scheduling conference with Judge Gale, but they explain that after the scheduling conference, they reviewed the allegations in the Counterclaim in light of the established state and federal case law and determined that the Counterclaim fails to state a claim for relief.

A party is generally bound by stipulations which it has voluntarily entered.  *Willett v. State of Kan.*, 942 F. Supp. 1387, 1393 (D. Kan. 1996).  "Stipulations, however, are not absolute and will be set aside to prevent manifest injustice."  *Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.*, 532 F.3d 1063, 1075 (10th Cir. 2008) (citing *United States v. Montgomery*, 620 F.2d 753, 757 (10th Cir. 1980)).  "The district court has broad discretion to determine whether a party should be held to a stipulation or whether justice requires the

stipulation be set aside." *Id.* (citing *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1098 (10th Cir.

1991)).  A court may grant relief from a stipulation if it is improvident to enforce it or when

necessary to prevent manifest injustice.  *L.P.S. by Kutz v. Lamm*, 708 F.2d 537, 540 (10th Cir.

1983).  "A stipulation is improvidently entered into if it was the result of inadvertence or was

based upon an erroneous understanding of the facts or law."  *McReynolds v. Bigler*, No. 88-

1343-C, 1990 WL 129454, at *4 (D. Kan. Aug. 6, 1990) (citing *Graefenhain v. Pabst Brewing

Co.*, 870 F.2d 1198, 1206 (7th Cir. 1989)).

Here, the Scheduling Order includes a stipulation that the parties would file no motions to

dismiss.  However, the Court will grant relief from this stipulation to allow the Counterclaim

Defendants to file their Motion to Dismiss because the stipulation appears to result from

inadvertence.  However, the Court notes that "the scheduling order is an important part of the

pretrial process" and cautions that in the future the "parties should carefully review each order to

be certain that the order is an accurate statement of the facts and stipulations as agreed to by the

parties" and if there are errors, the parties should file objections within the proper time under

Fed. R. Civ. P. 72(a).  *John Morrell & Co. v. Rural Water Dist. No. 3*, No. 84-1519-C, 1990 WL

129462, at *2 (D. Kan. Aug. 20, 1990).

## B.  Tortious Interference Claim (Count I)

The Counterclaim Defendants first assert that Brightergy cannot maintain a tortious

interference claim against Canady individually for actions or inaction taken in her capacity as an

employee of ECAS.  But the law in Missouri is contrary to this argument.  The Missouri

Supreme Court has explained:

> While simply holding a corporate office does not expose an officer to individual
> liability for corporate misdeeds, it also does not necessarily shield the officer from
> individual liability.  An individual is not protected from liability simply because
> the acts constituting the tort were done in the scope and course, and pertained to,

6

the duties of his [or her] employment [and] a corporate officer may be held individually liable for tortious corporate conduct if he or she had actual or constructive knowledge of, and participated in, an actionable wrong.

*State ex rel. Doe Run Res. Corp. v. Neill*, 128 S.W.3d 502, 505 (Mo. banc 2004) (citations and internal quotation marks omitted); *see also Constance v. B.B.C. Dev. Co.*, 25 S.W.3d 571, 590 (Mo. Ct. App. 2000); *Grothe v. Helterbrand*, 946 S.W.2d 301, 304 (Mo. Ct. App. 1997); *Osterberger v. Hites Constr. Co.*, 599 S.W.2d 221, 229 (Mo. Ct. App. 1980).  Here, Brightergy alleges that Canady actually knew about and participated in the tortious conduct alleged by Brightergy.  Def.'s Answer and Countercl. at 10, ¶ 7 (Doc. 5).  Thus, under Missouri law, Brightergy has asserted a tortious interference claim against Canady in her individual capacity.

Next, the Counterclaim Defendants argue that Brightergy has failed to allege a claim for tortious interference because it has not alleged facts showing the existence of a valid business expectancy.  In Missouri, the elements of a tortious interference claim are:  "(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages."  *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 316 (Mo. banc 1993) (citation omitted).  A valid business expectancy is "more than a mere subjective expectancy—it must be a *reasonable* expectancy . . . ."  *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 250 (Mo. banc 2006) (citation omitted).  To have a valid business expectancy, a plaintiff need not have an existing contract.  *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 19 (Mo. banc 2012) (citation omitted).  Rather, "[a] probable future business relationship that gives rise to a reasonable expectancy of financial benefit is enough."  *Stehno*, 186 S.W.3d at 251 (citation omitted).

As Brightergy points out, Missouri courts have found a valid business expectancy sufficient to support a tortious interference claim and survive a motion to dismiss in cases where the plaintiff was the lowest bidder on a project, where the plaintiffs had entered into a letter of intent with a third party, and where the plaintiffs had an asset that they may have wished to sell in the future but were not currently attempting to sell, had not entered into negotiations with a particular person regarding a sale, and had no contracts to sell the asset. *See Killian Constr. Co. v. Jack D. Ball & Assoc.*, 865 S.W.2d 889, 891–92  (Mo. Ct. App. 1993) (lowest responsible bidder on a school construction contract had reasonable business expectancy of receiving contract); *Kennedy v. Kennedy*, 819 S.W.2d 406, 408–09 (Mo. Ct. App. 1991) (negotiations between plaintiffs and a third party which resulted in written letter of intent satisfied pleading requirement for business expectancy where the letter set forth broad terms for the trade, allowed the parties to sign and exchange an agreement later, and allowed either party to withdraw from the trade before the conveyance); *Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*, 32 S.W.3d 592, 598 (Mo. Ct. App. 2000) (independent newspaper carrier plaintiffs with the exclusive right to distribute defendant's newspapers and to sell those distribution rights had a reasonable business expectancy where plaintiffs alleged facts showing an ongoing market for their routes, of which the defendant was aware, even though they did not allege there were specific potential purchasers).

In *Bell v. May Dep't Stores Co.*, 6 S.W.3d 871 (Mo. banc 1999), the Missouri Supreme Court considered whether the plaintiff had sufficiently alleged a valid credit expectancy to support a tortious interference claim against a department store for reporting false and negative information to credit agencies where the plaintiff did not have a credit application pending with any creditor.  *Id.* at 876.  The court held that "a reasonable jury could find [plaintiff] had valid

credit expectancy based on his longstanding clean credit history, and his efforts to keep it clean."
*Id.* at 877.  The court noted that its holding was consistent with the rule in Missouri that a party
need not have a formal contract to demonstrate a valid credit expectancy.  *Id.*  The court also
explained that disputes over the reasonableness of the expectancy is a question of fact for the
jury to decide.  *Id.*  Because a reasonable jury could find that the plaintiff in that case had a
reasonable expectancy of obtaining credit with a clean credit report, the Missouri Supreme Court
held that a reasonable jury could find plaintiff had valid credit expectancy and concluded that the
trial court erred in granting summary judgment against the claim.  *Id.*

Although *Bell* was a summary judgment case, its ruling is instructive here.  Brightergy
need not have had a formal contract with North Kansas City as long as it has alleged facts
showing that it had a reasonable expectation of obtaining North Kansas City's business in leasing
and installing solar panel systems.  Taking Brightergy's allegations as true, Brightergy has
alleged facts showing a valid business expectancy existed sufficient to survive a motion to
dismiss.  In its Counterclaim, Brightergy alleges that in March 2012, it entered into discussions
with North Kansas City about leasing and installing solar panel systems on one or more of North
Kansas City's government buildings, it identified over 20 opportunities to install solar panel
systems, and it drafted plans and estimates for those projects and presented them to North Kansas
City.  At the end of those discussions, representatives from North Kansas City told Brightergy
that it was not in a position to install a solar panel system that year, but it was interested in doing
business with Brightergy in 2013.  Therefore, in June 2013, Brightergy contacted representatives
of North Kansas City and restarted discussions about leasing and installing solar panel systems.
Brightergy alleges that after it resumed its discussions with North Kansas City, the Counterclaim
Defendants began soliciting and contacting representatives of North Kansas City in an effort to

dissuade North Kansas City from doing business with Brightergy and to convince it to do business with ECAS.  Based on these allegations, Brightergy has alleged that it had a "probable future business relationship" with North Kansas City giving rise to "a reasonable expectancy of financial benefit." *Stehno*, 186 S.W.3d at 251 (citation omitted).  Therefore, Brightergy has alleged a valid business expectancy with North Kansas City sufficient to state a claim for tortious interference under Missouri law.

Finally, the Counterclaim Defendants argue that Brightergy has failed to allege the absence of justification, the fourth required element for a tortious interference claim under Missouri law.  "Absence of justification refers to the absence of a legal right to justify actions taken." *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 20 (Mo. banc 2012) (citation and internal quotation marks omitted).  A defendant is not liable for tortious interference if it has a legitimate economic interest in the business expectancy, unless the plaintiff shows that the defendant employed improper means in seeking to further only his own interests.  *Id.* (citing *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 252 (Mo. banc 2006)).  "'Improper means' are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law.'" *Id.* (quoting *Stehno*, 186 S.W.3d at 252).

Brightergy has alleged that the Counterclaim Defendants employed improper means in seeking to further their own interests.  Brightergy alleges that the Counterclaim Defendants made false and misleading representations about the cost savings of its products to North Kansas City in an intentional effort to induce it to do business with ECAS and to dissuade it from doing business with Brightergy.  Brightergy claims that the Counterclaim Defendants acted intentionally, willfully, and with evil motive in making these fraudulent representations to North

Kansas City.  Def.'s Answer and Countercl. at 17, ¶ 44 (Doc. 5).  Brightergy also alleges that the Counterclaim Defendants acted intentionally and without justification and used improper means. These allegations plead an absence of justification.

The Counterclaim Defendants argue that Brightergy has not alleged any "wrongful means" used by the Counterclaim Defendants, but instead, they contend, the allegations describe "successful marketing of a superior product by ECAS to [North Kansas City]."  Doc. 29 at 6. The Court cannot draw this inference from the allegations in the Counterclaim because it must take Brightergy's claims as true and accept all reasonable inferences in its favor.  Applying that standard to the allegations in the Counterclaim, the Court concludes that Brightergy has sufficiently alleged the fourth element of a tortious inference claim—absence of justification. Thus, Brightergy has stated a plausible claim for tortious interference under Missouri law.

### C.  Common Law Unfair Competition Claim (Count II)

The Counterclaim Defendants next assert that Brightergy's unfair competition claim fails because Missouri law limits claims for unfair competition to actions where the defendant is alleged to have misappropriated the trade name or otherwise attempted to pass itself off as the plaintiff.  In this case, the Counterclaim Defendants argue, Brightergy does not allege misappropriation and therefore it has failed to state a claim for unfair competition under Missouri law.  In support of this argument, the Counterclaim Defendants cite two Missouri cases for the proposition that unfair competition under Missouri law requires misappropriation or the "passing off" of the business of one for that of another.  *See Essex v. Getty Oil Co.*, 661 S.W.2d 544, 555 (Mo. Ct. App. 1983); *Am. Equity Mortg., Inc. v. Vinson*, 371 S.W.3d 62, 64 (Mo. Ct. App. 2012). While these two cases describe the types of cases in which plaintiffs historically have alleged

unfair competition under Missouri law, they do not foreclose an unfair competition claim when no misappropriation is alleged.

Importantly, in *American Equity Mortgage, Inc. v. Vinson*, the Missouri Court of Appeals recognized that "'Missouri courts may look to the Restatement (Third) of Unfair Competition when analyzing unfair competition claims.'" *Am. Equity Mortg., Inc. v. Vinson*, 371 S.W.3d 62, 64 (Mo. Ct. App. 2012) (quoting *Hubbs Mach. & Mfg., Inc. v. Brunson Instrument Co.*, 635 F. Supp. 2d 1016, 1018 (E.D. Mo. 2009) (citing *Doe v. TCI Cablevision*, 110 S.W.3d 363, 368 (Mo. banc 2003))). "The Restatement provides generally that there can be liability for causing harm to the commercial relations of another by engaging in a business or trade where the harm results from acts or practices relating to (1) deceptive marketing; (2) infringement of trademarks and other indicia of identification; and (3) appropriation of intangible trade values including trade secrets and the right of publicity." *Hubbs Mach. & Mfg., Inc.*, 635 F. Supp. 2d at 1018–19 (citing Restatement (Third) of Unfair Competition § 1 (1995)). In *American Equity Mortgage, Inc. v. Vinson*, the Missouri Court of Appeals cited the Restatement (Third) of Unfair Competition § 2 which explains the prohibition on deceptive marketing and states, "[O]ne who advertises goods or services in a way likely to deceive or mislead prospective patrons to the commercial detriment of another is subject to liability for such deceptive practices." *Am. Equity Mortg., Inc.*, 371 S.W.3d at 64 (citing Restatement (Third) of Unfair Competition § 2 (1995)).

In addition, the comments to Restatement (Third) of Unfair Competition § 1 illuminate the scope of unfair competition claims:

> Certain recurring patterns of objectionable practices form the basis of the traditional categories of liability specifically enumerated in Subsection (a)(1)–(3). However, these specific forms of unfair competition do not fully exhaust the scope of statutory or common law liability for unfair methods of competition, and Subsection (a) therefore includes a residual category encompassing other business practices determined to be unfair. . . . As a general matter, if the means of

competition are otherwise tortious with respect to the injured party, they will also ordinarily constitute an unfair method of competition. . . . A competitor who diverts business from another by means of fraudulent misrepresentations or through the wrongful use of confidential information, for example, may in some circumstances be subject to liability for unfair competition even if the conduct is not specifically actionable under the rules relating to deceptive marketing or the appropriation of trade secrets.

Restatement (Third) of Unfair Competition § 1 cmt. g.

Brightergy directs the Court to two federal cases that have allowed unfair competition claims to proceed under Missouri law although the plaintiffs in them did not base their claims on an alleged misappropriation of property. First, in *Sales Resource, Inc. v. Alliance Foods, Inc.*, Nos. 4:08cv0732 TCM, 4:09cv0666 TCM, 2009 WL 2382365 (E.D. Mo. July 30, 2009), the plaintiff brought an unfair competition claim under Missouri law based on several allegations. They included the assertion that defendant made affirmative misrepresentations to plaintiff's suppliers that caused the suppliers to end their relationships with plaintiff and retain defendant, instead. *Id.* at *2. Defendant moved for dismissal using the same argument asserted here by the Counterclaim Defendants—that plaintiff did not allege any misappropriation of property to support an unfair competition claim and Missouri law requires such an allegation. *Id.* at *6. The court noted that Missouri looks to the Restatement when analyzing unfair competition claims. *Id.* The Restatement describes three categories of unfair competition: (1) deceptive marketing, (2) trademark infringement, and (3) "'appropriation of intangible trade values including trade secrets and the right of publicity.'" *Id.* (quoting Restatement (Third) of Unfair Competition § 1(a)(1)–(3) (1995)). But the Restatement also provides that "'these specific forms of unfair competition do not fully exhaust the scope of statutory or common law liability for unfair methods of competition, and Subsection (a) therefore includes a residual category encompassing other business practices determined to be unfair.'" *Id.* (quoting Restatement (Third) of Unfair

13

Competition § 1 cmt. g (1995)).  The court noted the following guidance found in comment g of

the Restatement (Third) of Unfair Competition § 1:

> "As a general matter, if the means of competition are otherwise tortious with
> respect to the injured party, they will also constitute an unfair method of
> competition."  For example, "interference in the commercial relations of a
> competitor resulting from unlawful threats directed at customers of the competitor
> will . . . constitute unfair competition."  Also, "a court may conclude that a failure
> to disclose to prospective consumers particular information that is critical to an
> intelligent purchasing decision constitutes unfair competition."

*Id.* (quoting Restatement (Third) of Unfair Competition § 1 cmt. g (1995)).  In *Sales Resource,*

*Inc. v. Alliance Foods, Inc.*, although the court found that neither party had provided clear

authority for their respective positions, it denied the motion to dismiss finding it appropriate for

the fact-finder "'to determine if [defendant's] behavior violated society's notions of fair play and

fundamental fairness.'"  *Id.* at *7 (quoting *Adbar Co., L.C. v. PCAA Missouri, LLC*, No. 4:06–

CV–1689 (JCH), 2008 WL 68858, at *12 (E.D. Mo. Jan. 4, 2008)).

Second, in *American Traffic Solutions, Inc. v. B&W Sensors, LLC*, No. 4:13CV0229

AGF, 2014 WL 1272509, at *1 (E.D. Mo. Mar. 27, 2014), defendant moved for judgment on the

pleadings against plaintiff's unfair competition claim.[1]  The court first recognized that Missouri

courts look to the Restatement (Third) of Unfair Competition when analyzing unfair competition

claims.  *Id.* at *5.  The court then explained that plaintiff had alleged defendant made false

representations to purchasers and potential purchasers of video speed detection systems that

plaintiff did not own and could not offer or support such systems and did not have expertise in

the field of speed detection cameras.  *Id.* at *8.  Plaintiff also claimed that defendants falsely

represented that defendant, rather than plaintiff, developed patented video speed detection

---

[1]        In this case, the parties disputed whether the claims were governed by Texas or Missouri law.
*Am. Traffic Solutions, Inc.*, 2014 WL 1272509, at *4.  The court presumed Texas law applied, but
reviewed the law of each state finding that the elements of the torts asserted are substantially identical
under either Texas or Missouri law.  *Id.*

14

technology, and falsely claimed endorsements of that technology.  *Id.*  Plaintiff alleged that with

these false representations, defendant unfairly represented to purchasers and potential purchasers

that "it could offer the expertise and advantages attributable to Plaintiff and its systems, in order

to gain a competitive advantage over Plaintiff in the market for video speed detection systems."

*Id.*  The court found that these allegations were "more than sufficient to state a cause of action

for unfair competition."  *Id.* (citing *Am. Equity Mortg., Inc. v. Vinson*, 371 S.W.3d 62, 64 (Mo.

Ct. App. 2012)) (further citation omitted).

      Although this Court has not located a Missouri state court case which provides explicitly

that a plaintiff may proceed on an unfair competition claim without alleging misappropriation,

the Court is persuaded by these federal court decisions applying Missouri law to claims that are

similar to Brightergy's unfair competition claim.  Each of the federal cases relied on the

Restatement (which Missouri follows in analyzing unfair competition claims) and concluded that

the plaintiffs' unfair competition claims survived dismissal on the pleadings where the plaintiffs

alleged that defendants made misrepresentations to the plaintiffs' customers or potential

customers causing plaintiffs to lose the business.  These are the same allegations that Brightergy

asserts here to support its unfair competition claim.  Brightergy alleges that the Counterclaim

Defendants made false representations to North Kansas City about ECAS's products and the cost

savings that would result from North Kansas City using those products in an effort to dissuade

North Kansas City from doing business with Brightergy and to encourage it to hire ECAS for its

solar panel systems project.  Under these facts, the Court finds that Brightergy has alleged that

the Counterclaim Defendants engaged in "deceptive marketing" as defined by the Restatement.

Thus, Brightergy has sufficiently stated a claim for unfair competition under Missouri law.

The Counterclaim Defendants also argue that Brightergy's unfair competition fails because (1) Brightergy does not allege any facts showing that the Counterclaim Defendants did anything improper but rather were only competing for North Kansas City's business, and (2) Canady cannot be held personally liable for torts committed in her capacity as an ECAS employee.  For the same reasons described above, the Court rejects both arguments.  Brightergy has alleged sufficient facts which, if accepted as true, establish that the Counterclaim Defendants engaged in unfair competition in violation of Missouri law and that Canady had actual or constructive knowledge of, and participated in, an actionable wrong, thereby subjecting her to personal liability.

### D.  Defamation and Injurious Falsehood Claims (Counts III & IV)

Finally, the Counterclaim Defendants assert that Brightergy's defamation and injurious falsehood claims fail for two reasons:  (1) the alleged statements made by the Counterclaim Defendants are not defamatory and therefore cannot support a defamation or injurious falsehood claim; and (2) Brightergy has failed to plead special damages as required by Fed. R. Civ. P. 9(g). The Court addresses each argument in turn.

### 1.  The Alleged Statements are Defamatory.

The Counterclaim Defendants argue that the statements alleged in Brightergy's Counterclaim—that Canady told representatives of North Kansas City that Brightergy's solar panels and equipment were overpriced and inferior to ECAS's panels and were junk because they were made outside of the United States—are not defamatory as a matter of law.  Therefore, the Counterclaim Defendants argue Brightergy has failed to state a claim for defamation or injurious falsehood.

16

In Missouri, the torts of defamation and injurious falsehood protect different interests. *State ex rel. BP Prods. N. Am. Inc. v. Ross*, 163 S.W.3d 922, 929 (Mo. banc 2005) (citing Restatement (Second) of Torts § 623A cmt. g (1977)). "'The action for defamation is to protect the personal reputation of the injured party . . . . The action for injurious falsehood is to protect economic interests of the injured party against pecuniary loss.'" *Id.* (quoting Restatement (Second) of Torts § 623A cmt. g (1977)). The Missouri Court of Appeals has stated that "[d]efamation analysis applies to the tort of injurious falsehood." *State ex rel. Diehl v. Kintz*, 162 S.W.3d 152, 156 n.4 (Mo. Ct. App. 2005) (citing *Kennedy v. Microsurgery and Brain Research Inst.*, 18 S.W.3d 39, 43–44 (Mo. Ct. App. 2000)).

To state a claim for defamation in Missouri, a plaintiff must allege (1) publication, (2) of a defamatory statement, (3) that identifies the plaintiff, (4) that is false, (5) that is published with the requisite degree of fault, and (6) damages the plaintiff's reputation. *State ex rel. BP Prods. N. Am. Inc.*, 163 S.W.3d at 929 (citing *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. banc 2000)). In contrast, a claim for injurious falsehood exists when:

> [o]ne who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

*Id.* (citing *Annbar Assocs. v. Am. Express Co.*, 565 S.W.2d 701, 706 (Mo. Ct. App. 1978) (quoting Restatement (Second) of Torts § 623A (1977))). "[T]he wrong of 'injurious falsehood' [consists] of 'the publication of matter derogatory to the plaintiff's . . . business in general, . . . of a kind calculated to prevent others from dealing with him . . . .'" *Annbar Assoc.*, 565 S.W.2d at 706–07 (quoting *Prosser on Torts* (4th ed.) § 128, pp. 919–920 (1971)).

A defamatory statement is one "that tends to harm a person in his or her business, trade, profession, or office." *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 311 (Mo. banc 1993) (citing *Carter v. Willert Home Prods., Inc.*, 714 S.W.2d 506, 509 (Mo. banc 1986)). "The words used must impute a lack of knowledge, skill, capacity, or fitness to perform one's duties; or fraud, want of integrity, or misconduct in the line of one's calling." *Id.* (citing *Brown v. Kitterman*, 443 S.W.2d 146, 154 (Mo. 1969)).

Whether the alleged language is defamatory is a question of law for the Court. *State ex rel. Diehl*, 162 S.W.3d at 155 (citing *Sterling v. Rust Commc'ns*, 113 S.W.3d 279, 281 (Mo. Ct. App. 2003)). The Missouri Supreme Court has provided guidance for courts when determining whether a statement is defamatory. *See Nazeri*, 860 S.W.2d at 311. "[T]he words must be stripped of any pleaded innuendo, and construed in their most innocent sense," but they must also "be considered in context, giving them their plain and ordinarily understood meaning." *Id.* (citations omitted). The alleged defamatory words "'are to be taken in the sense which is most obvious and natural and according to [the] ideas they are calculated to convey to those to whom they are addressed.'" *Id.* (quoting *Kirk v. Ebenhoch*, 191 S.W.2d 643, 645 (Mo. 1945)). The Missouri Supreme Court has recognized that "these standards are not absolutely consistent," but concluded that "they should be read together." *Id.*

The Missouri Supreme Court also recognized in *Nazeri* that "[t]he First Amendment's guarantee of freedom of speech makes expressions of opinion absolutely privileged." *Id.* at 314. Whether an alleged defamatory statement is considered an opinion or an assertion of fact is a question of law for the court's determination. *Id.* The Missouri Supreme Court has explained that the United States Supreme Court has rejected "'a wholesale defamation exemption for anything that might be labeled "opinion,"' noting that 'expressions of "opinion" may often imply

an assertion of objective fact.'" *Id.* (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990)).  Instead, "[t]he test to be applied to an ostensible 'opinion' is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact." *Id.* (citing *Milkovich*, 497 U.S. at 21) (further citation omitted).  "The issue of falsity relates to the *defamatory* facts implied by a statement—in other words, whether the underlying statement about the plaintiff is demonstrably false." *Id.*  The court does not ordinarily consider as a factor whether the speaker subjectively believed the statement, but proof of subjective falsity may prove malice where that is a required element for recovery. *Id.* (citing *Milkovich*, 497 U.S. at 20 n.7).  "But neither 'imaginative expression' nor 'rhetorical hyperbole' is actionable as defamation." *Id.* (citing *Milkovich*, 497 U.S. at 20).

Applying these standards under Missouri law to the statements at issue here—that Brightergy's solar panels and equipment were overpriced and inferior to ECAS's panels and were junk because they were made outside of the United States—the Court concludes that Brightergy has alleged defamatory statements sufficient to support its defamation and injurious falsehood claims under Missouri law.  Considering the context in which these statements were made—during a meeting with representatives of North Kansas City while both companies were vying for its business in solar panel systems—the alleged defamatory statements here "impute a lack of knowledge, skill, capacity, or fitness to perform one's duties . . . ." *Nazeri*, 860 S.W.2d at 311 (citation omitted).  Even when construed in their most innocent sense, the statements attributed to the Counterclaim Defendants (which are accepted as true) criticized the quality of Brightergy's business and created an inference that Brightergy is unfit to perform work in the solar panel system industry.  These allegations are sufficient to state a claim for defamation and injurious falsehood under Missouri law. *See Kennedy v. Microsurgery and Brain Research Inst.*,

18 S.W.3d 39, 44 (Mo. Ct. App. 2000) (alleged statements that a doctor performed unnecessary surgery and did so for monetary purposes "certainly impute a lack of skill and want of integrity on [the doctor's] part," and thus, the statements were defamatory).

The Court is not persuaded by the Counterclaim Defendants' reliance on *Chastain v. Kansas City Star*, 50 S.W.3d 286 (Mo. Ct. App. 2001). In that case, the plaintiff brought a defamation claim against a newspaper, reporter, and mayor for statements made by the mayor and printed in the newspaper criticizing plaintiff's plan for a light rail transit system. The Missouri Court of Appeals determined that plaintiff had failed to state a claim for defamation because none of the alleged defamatory statements were spoken "of or concerning" plaintiff. *Id.* at 289. The court explained that "'[i]n order for . . . words to be actionable, they must refer to the plaintiff and to be understood by others as referring to the plaintiff.'" *Id.* at 288 (quoting *May v. Greater Kansas City Dental Soc'y*, 863 S.W.2d 941, 944 (Mo. Ct. App. 1993)). Moreover, "[d]efamatory words 'must be of such a nature that the court can presume, as a matter of law, that they will tend to disgrace and degrade the person or hold him to public hatred, contempt or ridicule or cause him to be shunned and avoided; in other words they must reflect on his integrity, his character and his good name and standing in the community and tend to expose him to public hatred, contempt or disgrace.'" *Id.* at 289 (quoting *Carey v. Pulitzer Publ'g Co.*, 859 S.W.2d 851, 855 (Mo. Ct. App. 1993)). In *Chastain*, the court found that the alleged defamatory statements related only to plaintiff's light rail transit plan and an upcoming initiative vote on that plan. *Id.* They were not "of or concerning" the plaintiff, himself. *Id.* Because the statements did not defame plaintiff, himself, the court concluded that plaintiff did not state a claim for defamation under Missouri law. *Id.*

The Counterclaim Defendants argue that the facts of *Chastian* are similar to the facts in this case—the alleged defamatory statements are not "of or concerning" Brightergy but instead addressed only its products.  As the Counterclaim Defendants argue, the alleged statements did not disgrace or degrade Brightergy, itself, and therefore, Brightergy has not stated a claim for defamation.  The Court disagrees.  In *Chastian*, the alleged defamatory statements criticized a political initiative, but not the person advocating for that initiative and therefore did not disgrace or degrade the plaintiff personally.  In contrast, the defamatory statements alleged in this case criticized a business's products.  Under Missouri law, "where the plaintiff contends that the [alleged defamatory] language affected his business, words must directly tend to injure or prejudice his profession, trade, business, or employment by imputing want of knowledge, skill, capacity, or fitness to perform or discharge his duties thereof."  *Carey*, 859 S.W.2d at 855 (citation omitted).  As explained above, the statements made by the Counterclaim Defendants criticized the quality of Brightergy's products and, in the context in which they were made, "imput[ed] want of knowledge, skill, capacity, or fitness to perform or discharge" the proposed solar panel system project for North Kansas City. [2]

In addition, the alleged defamatory statements at issue here are not merely statements of opinion and hyperbole, as the Counterclaim Defendants allege.  In support of this argument, the

---

[2]      The Court also rejects the Counterclaim Defendants' reliance on *Crown Battery Mfg. Co. v. Club Car, Inc.*, No. 3:12CV2158, 2013 WL 5670950 (N.D. Ohio Oct. 16, 2013).  In that case, the court applied New York law to alleged defamatory statements made by a manufacturer to its customers about issues relating to a supplier's parts.  *Id.* at *7.  The court explained that New York recognizes two separate and distinct torts—one for product disparagement and one for defamation.  *Id.*  In New York, a product disparagement claim denigrates the quality of the business' goods and services while a defamation claim impugns the basic integrity of the business.  *Id.* (citations omitted).  Because the alleged defamatory statements in that case related to the quality of the products rather than the integrity of the business, the plaintiff had failed to state a claim for defamation under New York law.  *Id.* at *8.  This case does not apply here because Missouri law, as opposed to New York law, governs the claims.  Moreover, the Court has not located any case in Missouri recognizing a separate and distinct tort for product disparagement claims as opposed to defamation claims.  Thus, *Crown Battery Mfg. Co.* does not apply here.

Counterclaim Defendants rely on *State ex rel. Diehl v. Kintz*.  In that case, the plaintiff circulated a flyer before a public hearing that accused a company applying for a trash transfer station as being a "trash terrorist."  162 S.W.3d at 154.  Analyzing a defamation claim based on the statements in the flyer, the Missouri Court of Appeals concluded that the "trash terrorist" statement was not defamatory, but rather, "[t]aken in context, the use of the phrase 'trash terrorists' reflects the writer's staunch opposition to the proposed trash transfer station."  *Id.* at 156.  The court also found that the phrase "trash terrorists" was "properly characterized as imaginative expression or rhetorical hyperbole."  *Id.*  The court explained, "[a]gain, taken in context and considering the surrounding circumstances, a reader of the flyer would not believe that the company is a terrorist.  Rather, the reader would recognize the language as an epithet used to voice opposition to the proposed trash transfer station."  *Id.*

In contrast, one cannot consider the statements allegedly made here by the Counterclaim Defendants "imaginative expression" or "rhetorical hyperbole."  Rather, the alleged defamatory statements, taken in context, consist of disparaging comments about Brightergy's products.  The Counterclaim Defendants allegedly made those statements in an attempt to discourage North Kansas City from doing business with Brightergy and to hire ECAS instead for the solar panel systems project.

Viewing the facts in the light most favorable to Brightergy, one legitimately can construe Canady's alleged statements as "impl[ying] an assertion of objective fact."  *Nazeri*, 860 S.W.2d at 314.  Under similar facts, the Missouri Court of Appeals found that a statement made by an agent of a competing concrete business that its competitor was delivering inferior material "impl[ied] that he ha[d] knowledge of undisclosed defamatory facts" and therefore the statement "may constitute actionable defamation."  *Cuba's United Ready Mix, Inc. v. Bock Concrete*

*Founds., Inc.*, 785 S.W.2d 649, 651 (Mo. Ct. App. 1990).  Likewise, here, Brightergy has alleged

that Canady made disparaging statements about the quality of Brightergy's products in the

meeting with representatives from North Kansas City.  As an employee of a competing business

in the same industry, one can construe Canady's statements as implying an objective fact about

Brightergy's business.  Therefore, Brightergy has alleged that the Counterclaim Defendants

made defamatory statements sufficient to support defamation and injurious falsehood claims

under Missouri law.

### 2.  Brightergy Has Alleged Special Damages.

The Counterclaim Defendants also argue that Brightergy's defamation and injurious

falsehood claims fail because Brightergy has failed to plead special damages as required under

Fed. R. Civ. P. 9(g).  Fed. R. Civ. P. 9(g) states:  "If an item of special damage is claimed, it

must be specifically stated."  *Id.*  Our Court has described this rule as "a 'relatively liberal

standard' which may be satisfied if a complaint's allegations '"are definite enough to enable the

opposing party to prepare his or her responsive pleading and a defense to the claim."'"

*Mosqueda v. Sonic of Newton, Inc.*, No. 12–1450–RDR, 2013 WL 1933842, at *3 (D. Kan. May

9, 2013) (quoting *A.H. v. Knowledge Learning Corp.*, No. 09-2517-DJW, 2011 WL 2084143, at

*2 (D. Kan. May 24, 2011) (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal

Practice and Procedure* § 1311 at 354–55 (3d ed. 2004))).  This rule "'does not require that the

exact dollar amount of special damages be specifically pleaded.'"  *Unruh v. Prairie View, Inc.*,

No. 07-1174-JTM-DWB, 2007 WL 4180456, at *1 (D. Kan. Nov. 21, 2007) (quoting *SCO

Group, Inc. v. Novell, Inc.*, No. 2:04CV 139DAK, 2004 WL 4737297, at *10 (D. Utah June 9,

2004)) (further citation omitted).  "Instead, the issue is 'whether the pleadings contain such

information as will apprise the defendant of such damages as must of necessity flow from that

which is alleged.'" *Id.* (quoting *SCO Group*, 2007 WL 4180456, at *1) (further citation omitted).

Here, the Court finds that Brightergy has sufficiently alleged special damages to apprise the Counterclaim Defendants of its claim and to allow them to prepare a responsive pleading and defend the claim.  Brightergy alleges that it has sustained lost profits due to the Counterclaim Defendants' actions.  In its Counterclaim, Brightergy describes its dealings with North Kansas City in an effort to obtain its business for a solar panel systems project.  Brightergy also alleges in its Counterclaim that the Counterclaim Defendants' alleged conduct caused North Kansas City to decline to do business with Brightergy.  The Court finds that these allegations sufficiently allege special damages as required by Fed. R. Civ. P. 9(g).  *See Folkers v. Am. Massage Therapy Ass'n, Inc.*, No. Civ.A. 03–2399–KHV, 2004 WL 306913, at *6 (D. Kan. Feb. 10, 2004) (plaintiff's allegations that defendants publically defamed him and his business reputation by publishing statements on a website that would be viewed by an extraordinary number of people were sufficient "just barely, to satisfy the dictates of Rule 9(g).").

## IV.   Conclusion

For the reasons explained above, the Court concludes that the four claims asserted in Brightergy's Counterclaim sufficiently state a claim for relief and survive the Counterclaim Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6).

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Counterclaim Defendants' Motion to Dismiss Brightergy's Counterclaim (Doc. 18) is denied.

**IT IS SO ORDERED.**

Dated this 10th day of September, 2014, at Topeka, Kansas.

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**